**Slip Op. 01- 152**

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| NIPPON STEEL CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | |
| THE UNITED STATES, | : | |
| Defendant, | : | |
| and | : | |
| BETHLEHEM STEEL CORPORATION, U.S. STEEL GROUP, A UNIT OF USX CORPORATION, ISPAT INLAND INC., LTV STEEL COMPANY, INC., GALLATIN STEEL, IPSCO STEEL, INC., STEEL DYNAMICS, INC., and WEIRTON STEEL CORPORATION, | : | |
| | : | Consolidated Court |
| Defendant-Intervenors. | : | No. 99-08-00466 |
| | : | **Public Version** |
| BETHLEHEM STEEL CORPORATION, U.S. STEEL GROUP, A UNIT OF USX CORPORATION, ISPAT INLAND INC., and LTV STEEL COMPANY, INC., | : | |
| Plaintiffs, | : | |
| v. | : | |
| THE UNITED STATES, | : | |
| Defendant, | : | |
| and | : | |
| NIPPON STEEL CORPORATION, | : | |
| Defendant-Intervenor. | : | |

[Final judgment ordering specific weight conversion factor.]

Dated: December 27th, 2001

Gibson, Dunn & Crutcher LLP (Daniel J. Plaine, Gracia M. Berg) for plaintiff Nippon Steel Corporation.

Robert D. McCallum, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Kyle Chadwick), John D. McInerney, Elizabeth C. Seastrum, and Linda S. Chang, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Skadden, Arps, Slate, Meagher & Flom LLP (Robert E. Lighthizer and John J. Mangan) for defendant-intervenors Bethlehem Steel Corporation, U.S. Steel Group, a unit of USX Corporation, Ispat Inland, Inc. and LTV Steel Company, Inc.

Schagrin Associates (Roger B. Schagrin) for defendant-intervenors Gallatin Steel, IPSCO Steel Inc., Steel Dynamics, Inc., and Weirton Steel Corporation.

**OPINION**

**RESTANI, Judge:**  Plaintiff Nippon Steel Corporation ("Nippon") challenges the Final Results of Redetermination Pursuant to Court Remand ("Third Remand Results") by the United States Department of Commerce ("Department" or "Commerce") in Hot-Rolled Flat-Rolled Carbon-Quality Steel Products from Japan, 64 Fed. Reg. 24,329 (Dep't Comm. 1999) ("Final Determ."). Commerce's sole charge on the third remand was to devise a new approach to determine neutral facts available because Commerce had unreasonably selected weighted average margins for theoretical-weight sales under its previous methodology. See Nippon Steel Corp. v. United States, No. 99-08-00466, Slip Op. 01-122, at 11 (Ct. Int'l Trade Oct. 12, 2001) ("Nippon III"). Nippon argues that Commerce has not developed a new methodology at all but has merely "repackaged" its previous approach. Familiarity with the previous opinions ordering remand is

presumed.  See Nippon Steel Corp. v. United States, 146 F. Supp. 2d 835 (Ct. Int'l Trade 2001)

("Nippon II"); Nippon Steel Corp. v. United States, 118 F. Supp. 2d 1366 (Ct. Int'l Trade 2000)

("Nippon I").

This matter stems from Nippon's failure to timely provide weight conversion data for

U.S. sales of its products ("CONNUMs") made on a theoretical-weight basis and Commerce's

subsequent methodology for calculating a substitute dumping margin.  It is customary for steel

customers to purchase products based upon a theoretical weight, which may be different from the

actual weight of the product delivered.  The weight conversion factor is a simple ratio to reflect

this discrepancy.  The weight conversion factor primarily compares the actual weight of products

upon delivery to the theoretical weight purchased by the customer.  This ratio is used to

extrapolate the actual amount delivered where only theoretical information is provided so that

Commerce can calculate the proper margin.  Nippon failed to initially provide weight conversion

data and Commerce, as a result, was required to fill the informational gap based on the facts

available.  See Statement of Administrative Action, accompanying H.R. Rep. No. 103-826(I), at

869, reprinted in 1994 U.S.C.C.A.N. 4040, 4198 ("SAA").

Instead of filling this particular gap with a substitute weight conversion factor, Commerce

bypassed the weight conversion analysis entirely and created substitute margins for the

theoretical-weight sales.  See Nippon III at 7.[1]  In doing so, the Department calculated margins

specific to the individual products.  Commerce's methodology made a distinction between

products sold entirely on a theoretical weight basis ("exclusively-theoretical CONNUMs" or

"pure CONNUMS"), and products sold based upon a combination of theoretical and actual

---

[1]  These steps resulted in an overall dumping margin of 18.39%.

weight ("mixed CONNUMs"). For each mixed CONNUM, Commerce calculated a weighted-average margin for the theoretical-weight sales based on the same product's actual-weight sales. For each exclusively-theoretical CONNUM, Commerce calculated a weighted average based on the actual-weight sales from all of the mixed CONNUMs.

The court recognized that Commerce may adopt a new methodology to complete its margin calculation instead of directly replacing the missing information so long as that methodology is reasonable. See Nippon III at 9 n.5. The court rejected Commerce's methodology in Nippon III because the substitute margins calculated by the Department were contrary to the evidence and were unreasonable. See id. at 8-9. The court found that the margins necessarily contained an implicit weight conversion factor that suggested Nippon had delivered several times more steel than U.S. customers actually purchased. See id. at 8 n.4. Because that illogical result was inherently punitive and, therefore, not appropriate in a neutral facts available context, Commerce was ordered to devise a new approach.

In the Third Remand Results, Commerce largely maintained its previous methodology. Commerce's approach to mixed CONNUMs is identical to that in Nippon III. Commerce continued to apply the margin based on each product's actual-weight sales. Commerce's only substantive change was in calculating the margin for exclusively-theoretical CONNUMs. Commerce modified its approach by substituting a margin based on a weighted average of all reported U.S. actual-weight sales instead of a weighted average of Nippon's few actual-weight sales. Nippon argues that Commerce has not meaningfully changed its methodology as ordered. Nippon claims that by changing only the exclusively-theoretical CONNUM methodology, Commerce did not address the majority of products at issue here and, therefore, failed to comply

with the court's order.[2]  Nippon overstates the breadth of the court's directive.  The court did not require that Commerce completely overhaul its entire methodology.  The court merely required Commerce to bring its assumptions more in line with reality.

Nonetheless, the court takes no position on whether Commerce's methodology is reasonable as a general matter.  In this case, Commerce must bear the responsibility for its conduct.  Commerce attempts to justify its previous approach, which it largely continues, by attempting to rebut Nippon's prior argument that Commerce's substitute margin contained a grossly inflated implicit weight conversion factor.[3]  Commerce now argues that Nippon's calculations determining the implicit weight conversion factor were incorrect.[4]  In advance of oral argument, Commerce was specifically asked to address the implicit weight conversion factor at oral argument and it failed to do so in any meaningful way.  Because Nippon had raised this specific argument at the agency level without meaningful response, and because Commerce then ignored the court's explicit request for a response, the court in Nippon III deemed it futile to ask Commerce again to justify its methodology in this regard.  In this fourth installment, the court

---

[2] Nippon points out that, of the [    ] CONNUMs at issue here, only [    ] are exclusively-theoretical CONNUMs.  Those [    ] exclusively-theoretical CONNUMs represent only [    ] percent of the quantity of combined products in this matter.

[3] In Nippon III, the court noted that Commerce's margin contained an implicit weight conversion factor of [      ] suggesting that Nippon delivered approximately [    ] times more steel than its U.S. customers ordered.

[4] Commerce argues that a proper application of a theoretical-to-actual weight conversion factor would also include adjustments to other variables besides quantity, including gross unit price and expenses.  Commerce now explains that the quantity is multiplied by the weight conversion factor while the combined gross unit price and expense amount is divided by the weight conversion factor.  Commerce argues that Nippon's calculations included only the former and are, therefore, incorrect.

refuses to further extend litigation by reopening the issue. It would be fundamentally unfair to prolong litigation and require Nippon to substantively respond to Commerce's belated justifications, regardless of their merit. Therefore, without rejecting Commerce's methodology in general, the court rejects its application here.

Nippon requests that the court direct Commerce to use a particular margin by adopting Nippon's suggested weight conversion factor of [          ]. This court previously declined to adopt Nippon's untimely submitted weight conversion data stating that, "[d]epending on necessity, it is Commerce's decision whether to use this data." Nippon III at 10 n.6. The court notes, however, that Nippon's suggested weight conversion factor is only [          ] lower than the imputed weight conversion factor of [          ] found by Commerce in the Third Remand Results. Because the difference is slight and because Commerce is not permitted to extend litigation by ignoring court inquiries, the court will put the matter to rest by directing Commerce to use Nippon's weight conversion factor. It should be noted that Nippon's initial error was a technical one of inadvertent untimely submission. There is no reason to believe its data is incorrect. At this point, Commerce's right to protect the efficiency of its administrative proceedings must yield to the rights of the parties and the court to meaningful adjudication of disputes.

**Conclusion**

Commerce is ordered to substitute a weight conversion factor of [     ] to determine

Nippon's margins.

_____

Jane A. Restani

JUDGE

Dated:  New York, New York

This 27th day of December, 2001